UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

MICHAEL J. HORTON,

    Plaintiff,

v.

C.E. DUCART, et al.,

    Defendants.

Case No. 16-cv-06411-LB

**ORDER OF SERVICE**

[Re: ECF No. 9]

# INTRODUCTION

Michael J. Horton, an inmate currently housed at the California State Prison - Sacramento, filed this *pro se* prisoner's civil rights action under 42 U.S.C. § 1983. He consented to proceed before a magistrate judge. (ECF No. 6.)[1] Upon initial review, the court dismissed the complaint with leave to amend. Mr. Horton then filed an amended complaint, which is now before the court for review. This order finds that the amended complaint states cognizable claims and orders service of process on the defendants.

---

[1] Record citations refer to material in the Electronic Case File ("ECF"); pinpoint cites are to the ECF-generated page numbers at the top of the documents.

**STATEMENT**

Mr. Horton complains about prison officials' refusal to remove an "R" suffix that was placed in his records.[2] He alleges the following in his amended complaint:

On or about October 12, 2011, prison officials at Tehachapi State Prison affixed an "R" suffix to Mr. Horton's custody designation after he received a rule violation report for indecent exposure. (ECF No. 9 at 12.) Later, "a classification staff representative (CSR) on 11/15/2011 denied the request to affix the unnecessary suffix to this petitioner's custody" because Mr. Horton had not received notice of the intended action. (*Id.*) "However, CDCR (Pelican Bay State Prison) chose" to apply the "R" suffix to Mr. Horton's custody designation. (*Id.*) The "R" suffix was applied "without proper due process rights to a hearing to determine the legitimacy of this adverse affect to [Mr. Horton's] program." (*Id.* at 8.) Mr. Horton informed assistant chief deputy warden D. Bradbury that the "R" suffix was undeserved because Mr. Horton had not been arrested, charged or convicted of a sex offense, but assistant chief deputy warden Bradbury said that did not matter. (*Id.* at 12-13.) Mr. Horton also informed assistant chief deputy warden Bradbury that he "faced immenent (sic) harm for having a sex offender suffix. He responded to 'watch myself.'" (*Id.* at 13.)

On July 25, 2014, Mr. Horton was attacked by an inmate who became aware of the "R" suffix on Mr. Horton's custody designation and attacked him because of that suffix. (*Id.* at 13; ECF No. 9-1 at 3.) Mr. Horton was charged with battery and put in lock-up, where he lost certain privileges and suffered mental deterioration.

Thereafter, Mr. Horton pursued an inmate appeal in which he informed the appeals coordinator, correctional officer ("C/O") M. Hodges. of the wrongly-imposed "R" suffix. C/O Hodges refused to correct the problem. (ECF No. 9 at 13.)

---

[2] As explained in the order of dismissal with leave to amend, the California Department of Corrections and Rehabilitation (CDCR) uses letter designations for some classification and custody purposes. An "R" suffix is used as a custody designation to indicate that an inmate has a history of sex offenses. *See* Cal. Code Regs. tit. 15, § 3377.1; *see, e.g., id.* at § 3377.1(b) ("An 'R' suffix shall be affixed to an inmate's custody designation to ensure the safety of inmates, correctional personnel, and the general public by identifying inmates who have a history of specific sex offenses as outlined in Penal Code (PC) Section 290.")

The "'R' suffix requires [Mr. Horton] to register as a sex offender." (*Id.* at 14.) The "R" suffix also impedes Mr. Horton's access to certain job placements, family visits, and housing. (*Id.* at 15.) "[B]eing labeled a sex offender is dangerous to a prisoner and detrimental to one's safety" because other prisoners attack such offenders. (*Id.* at 18.)

Mr. Horton asserts that his right to due process and right to be free of cruel and unusual punishment have been violated by the retention of the "R" suffix on his custody designation. His amended complaint names three defendants in their official and individual capacities, and seeks monetary, declaratory and injunctive relief. (ECF No. 9 at 10; ECF No. 9-1 at 5.)

**ANALYSIS**

A federal court must engage in a preliminary screening of any case in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity. *See* 28 U.S.C. § 1915A(a). In its review the court must identify any cognizable claims, and dismiss any claims which are frivolous, malicious, fail to state a claim upon which relief may be granted, or seek monetary relief from a defendant who is immune from such relief. *See id*. at § 1915A(b). *Pro se* complaints must be liberally construed. *See Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two elements: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the violation was committed by a person acting under the color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988).

**1. Due Process Claim**

The Due Process Clause of the Fourteenth Amendment of the U.S. Constitution protects individuals against governmental deprivations of life, liberty or property without due process of law. Interests that are procedurally protected by the Due Process Clause may arise from two sources: the Due Process Clause itself and laws of the states. *See Meachum v. Fano*, 427 U.S. 215, 223-27 (1976). In the prison context, these interests are generally ones pertaining to liberty. Changes in conditions so severe as to affect the sentence imposed in an unexpected manner implicate the Due Process Clause itself, whether or not they are authorized by state law. *See Sandin v. Conner*, 515 U.S. 472, 484 (1995) (citing *Vitek v. Jones*, 445 U.S. 480, 493 (1980)

3

1  (transfer to mental hospital), and *Washington v. Harper*, 494 U.S. 210, 221-22 (1990) (involuntary
2  administration of psychotropic drugs)). Deprivations that are less severe or more closely related to
3  the expected terms of confinement may also amount to deprivations of a procedurally protected
4  liberty interest, provided that the liberty in question is one of "real substance." *See Sandin*, 515
5  U.S. at 477-87. An interest of "real substance" will generally be limited to freedom from restraint
6  that imposes an "atypical and significant hardship on the inmate in relation to the ordinary
7  incidents of prison life" or "will inevitably affect the duration of [a] sentence." *Id.* at 484, 487.

8      A classification decision that results in a prisoner being labeled a sex offender *might*, under
9  certain circumstances, result in a deprivation of a liberty interest of real substance. *See Neal v.*
10 *Shimoda*, 131 F.3d 818, 827-30 (9th Cir. 1997). In *Neal*, the court held that the state's program
11 that labeled a prisoner as sex offender *and* required him to successfully complete a treatment
12 program as a precondition for parole eligibility implicated a constitutionally-protected liberty
13 interest such that procedural protections were required before the sex offender label could be
14 placed on the prisoner. *Id.* at 828-29. It was not merely the "sex offender" label, but the
15 consequences that flowed from that label that combined to create a protected liberty interest in
16 *Neal*. *See, e.g., Hogg v. Cox*, 2016 WL 4151404, *1 (9th Cir. 2016) (due process claim based on
17 classification of inmate as a sex offender properly dismissed because plaintiff did not allege facts
18 sufficient to show that the classification implicated a liberty interest and that he was denied
19 procedural protections prior to his classification, but district court erred in not giving plaintiff
20 leave to amend to cure those deficiencies); *Barno v. Ryan*, 399 F. App'x 272, 273 (9th Cir. 2010)
21 (due process claim based on inmate's classification as a sex offender properly dismissed "because
22 the alleged classification error did not result in any deprivation or changes in the conditions of
23 confinement that constituted an 'atypical and significant hardship'")

24     The amended complaint alleges that one of the burdens that flowed from the imposition of the
25 "R" suffix is that Mr. Horton must register as a sex offender. Accepting that as true, as the court
26 must at the pleading stage, the amended complaint alleges sufficient facts to show an atypical and
27 significant hardship was imposed on Mr. Horton. Liberally construed, the amended complaint
28 states a due process claim based on the alleged failure to hold a hearing and the insufficiency of

4

the evidence to support the decision to retain the "R" suffix.

**2. Eighth Amendment Claim**

The Eighth Amendment requires that prison officials take reasonable measures to guarantee the safety of prisoners. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). In particular, prison officials have a duty to protect prisoners from violence at the hands of other prisoners. *Id*. at 833. A § 1983 claim may be stated under the Eighth Amendment against prison officials where the officials acted with "deliberate indifference" to the threat of serious harm or injury to a prisoner by spreading certain rumors about the prisoner or otherwise disclosing information to other prisoners that would endanger the prisoner. *See Valandingham v. Bojorquez*, 866 F.2d 1135, 1138 (9th Cir. 1989) (allegation that prison officials deliberately spread rumor that prisoner is snitch may state claim for violation of right to be protected from violence while in state custody). To be liable in a failure-to-prevent-harm situation or for disclosing information about a prisoner, the official must know of and disregard an excessive risk to prisoner safety. *See Farmer,* 511 U.S. at 837. The official must both know of "facts from which the inference could be drawn" that an excessive risk of harm exists, and he or she must actually draw that inference. *Id.*

The amended complaint alleges that Mr. Horton alerted assistant chief deputy Bradbury and C/O Hodges to the danger he faced from the "R" suffix, and both failed and refused to do anything to address the situation. Liberally construed, the amended complaint states a claim against defendants Bradbury and Hodges for an Eighth Amendment violation based on their alleged deliberate indifference to a risk to Mr. Horton's safety.

The amended complaint also names CDCR Director J. Beard as a defendant. The amended complaint does not allege that CDCR Director Beard took part in the decision-making with regard to the "R" suffix, so the claims against him in his *individual* capacity are dismissed. The action against him in his *official* capacity may proceed because he allegedly is responsible for the conditions in the CDCR and Mr. Horton's inmate appeal was denied at the director's level. (ECF No. 9 at 13, 14.) He apparently has statewide authority within the CDCR, and may be in a position to implement injunctive relief if it is granted.

# CONCLUSION

1. Liberally construed, the amended complaint states cognizable § 1983 claims against defendants Bradbury, Hodges and Beard. All other defendants and claims are dismissed. .

2. The clerk shall issue a summons and the United States Marshal shall serve, without prepayment of fees, the summons, a copy of the complaint and amended complaint, a copy of all the documents in the case file, and a copy of the "consent or declination to magistrate judge jurisdiction" form upon the following three defendants:

- D. Bradbury (assistant chief deputy warden at Pelican Bay)
- M. Hodges (correctional officer/appeals coordinator at Pelican Bay)
- Jeffrey Beard (Director, CDCR headquarters in Sacramento)

3. In order to expedite the resolution of this case, the following briefing schedule for dispositive motions is set:

   a. No later than **March 24, 2017**, the defendants must file and serve a motion for summary judgment or other dispositive motion. If the defendants are of the opinion that this case cannot be resolved by summary judgment, the defendants must so inform the Court prior to the date the motion is due. If the defendants file a motion for summary judgment, the defendants must provide to the plaintiff a new *Rand* notice regarding summary judgment procedures at the time they file such a motion. *See Woods v. Carey*, 684 F.3d 934, 939 (9th Cir. 2012). If the motion is based on nonexhaustion of administrative remedies, the defendants must comply with the notice and procedural requirements in *Albino v. Baca*, 747 F.3d 1162 (9th Cir. 2014).

   b. The plaintiff must serve and file his opposition to the summary judgment or other dispositive motion no later than **April 21, 2017**. The plaintiff must bear in mind the notice and warning regarding summary judgment provided later in this order as he prepares his opposition to any motion for summary judgment.

   c. If the defendants wish to file a reply brief, the reply brief must be filed and served no later than **May 5, 2017.**

4. The plaintiff is provided the following notices and warnings about the procedures for motions for summary judgment:

> The defendants [may make] a motion for summary judgment by which they seek to have your case dismissed. A motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure will, if granted, end your case. [¶] Rule 56 tells you what you must do in order to oppose a motion for summary judgment. Generally, summary judgment must be granted when there is no genuine issue of material fact -- that is, if there is no real dispute about any fact that would affect the result of your case, the party who asked for summary judgment is entitled to judgment as a matter of law, which will end your case. When a party you are suing makes a motion for summary judgment that is properly supported by declarations (or other sworn testimony), you cannot simply rely on what your complaint says. Instead, you must set out specific facts in declarations, depositions, answers to interrogatories, or authenticated documents, as provided in Rule 56(e), that contradict the facts shown in the defendants' declarations and documents and show that there is a genuine issue of material fact for trial. If you do not submit your own evidence in opposition, summary judgment, if appropriate, may be entered against you. If summary judgment is granted, your case will be dismissed and there will be no trial.

*Rand v. Rowland*, 154 F.3d 952, 962-63 (9th Cir. 1998). If a defendant files a motion for summary judgment for failure to exhaust administrative remedies, he or she is seeking to have the case dismissed. A plaintiff faced with such a motion can oppose it using the same methods as described above for other summary judgment motions. As with other defense summary judgment motions, if a motion for summary judgment for failure to exhaust administrative remedies is granted, the case will be dismissed and there will be no trial.

5. All communications by the plaintiff with the court must be served on a defendant's counsel by mailing a true copy of the document to the defendant's counsel. The court may disregard any document which a party files but fails to send a copy of to his opponent. Until a defendant's counsel has been designated, the plaintiff may serve a document by mailing a true copy of the document directly to the defendant, but once a defendant is represented by counsel, all documents must be mailed to counsel rather than directly to that defendant.

6. Discovery may be taken in accordance with the Federal Rules of Civil Procedure. No further court order under Federal Rule of Civil Procedure 30(a)(2) or Local Rule 16 is required before the parties may conduct discovery.

7. The plaintiff is responsible for prosecuting this case. The plaintiff must promptly keep the court informed of any change of address and must comply with the court's orders in a timely fashion. Failure to do so may result in the dismissal of this action for failure to prosecute pursuant

to Federal Rule of Civil Procedure 41(b). The plaintiff must file a notice of change of address in every pending case every time he is moved to a new facility or is released from custody.

8. The plaintiff is cautioned that he must include the case name and case number for this case on any document he submits to the court for consideration in this case.

**IT IS SO ORDERED.**

Dated: January 11, 2017

_____
LAUREL BEELER
United States Magistrate Judge

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL J. HORTON,<br><br>    Plaintiff,<br><br>    v.<br><br>D. BRADBURY, et al.,<br><br>    Defendants. | Case No.  16-cv-06411-LB<br><br>**CERTIFICATE OF SERVICE** |

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on January 11, 2017, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.

Michael J. Horton ID: P38483
California State Prison - SAC
PO Box 290066
Represa, CA 95671

Dated: January 11, 2017

Susan Y. Soong
Clerk, United States District Court

By: _____
Ada Means, Deputy Clerk to the
Honorable LAUREL BEELER

9